# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Sophia Voli Ann Haynes,<br><br>　　　　　Debtor. | Case No. 23-03130-eg<br><br>Chapter 13 |

## ORDER REGARDING VIOLATION OF SC LBR 9011-4 AND SANCTIONING COUNSEL

**THIS MATTER** comes before the Court on the Order Scheduling Hearing on Correspondence Received from Debtor (the "Order Scheduling Hearing") filed on July 9, 2024.[1] Sophia Voli Ann Haynes ("Debtor") filed correspondence with the Court on July 2, 2024 (the "Correspondence") asserting she was not aware that a plan electing to surrender her home had been filed and confirmed without her consent.[2] Since the case was filed, Debtor has been represented by Jason T. Moss ("Counsel") of Moss & Associates, Attorneys, P.A. (the "Firm"). The Order Scheduling Hearing required Debtor and Counsel to appear before the Court on July 25, 2024 (the "Hearing") to explain the circumstances surrounding the confirmation of Debtor's Chapter 13 plan and the allegations raised in the Correspondence.

At the Hearing, Debtor, Counsel, the Chapter 13 Trustee ("Trustee") and her staff attorney, and counsel for the Acting United States Trustee for Region Four ("AUST") were present. Shawn French, Esq. ("French") also appeared and represented that Debtor retained him after her plan was confirmed to represent her in the foreclosure action currently pending in state court.

---

[1] ECF No. 38.
[2] ECF No. 37.

1

**FACTUAL BACKGROUND**

With the assistance of Counsel, Debtor filed her Chapter 13 Voluntary Petition, along with her schedules and statements, on October 17, 2023 (the "Petition Date").[3] Debtor's Schedule A listed her fee simple ownership interest in her residence located in Lexington, South Carolina, which Debtor estimated as having a value of approximately $165,000.00. Schedule D disclosed two mortgages on Debtor's residence: (1) a first mortgage held by Superior Loan Servicing, securing a claim of $137,336.41, and (2) a second mortgage held by Victor Gregg Marturano ("Marturano") securing a claim of $30,000.00. For Superior Loan Servicing's claim, Debtor noted in Schedule D that the arrearage owed was "to be addressed by loan modification." Debtor's Schedule J, which budgeted for a monthly mortgage expense of $505.47, reflected Debtor's net monthly income as $207.78. On December 26, 2023, a secured claim for $150,291.25 was filed by "Gary L. Reed 401k Profit Sharing Plan, as to and undivided 100,000/131.000 interest; Dennis Gimian, a sole proprietor 401k Profit Sharing, as to and undivided 100,000/131.000 interest" (the "First Mortgagee") for a mortgage on Debtor's residence that appears to be serviced by Superior Loan Servicing.[4] Marturano subsequently filed two claims totaling $33,487.85 related to the second mortgage on Debtor's residence.[5]

Debtor's first proposed Chapter 13 plan (the "First Plan"), filed on the Petition Date, provided for payments of $189.00 per month for 60 months and proposed engaging in loss mitigation efforts with Superior Loan Servicing while maintaining contractual payments to Marturano.[6] An order lifting the automatic stay for Debtor to conduct loss mitigation/mortgage

---

[3] ECF No. 1.
[4] Proof of Claim No. 9.
[5] Proof of Claim Nos. 11 and 12, filed Jan. 24, 2024. Marturano filed a third claim for $1,500.00 that was withdrawn the following day. *See* POC No. 13, filed Jan. 24, 2024.
[6] ECF No. 3.

2

modification with Superior Loan Servicing was issued upon Debtor's request on November 8, 2023.[7] At the Trustee's request, the Court entered a C-II order on December 27, 2023, requiring Debtor to file and serve a modified plan within 10 days.[8] Debtor filed a modified plan (the "Second Plan") on January 3, 2024, proposing plan payments of $189.00 per month for three months followed by payments of $235.00 for 57 months.[9] The Second Plan did not change the proposed treatment of First Mortgagee's and Marturano's claims. The Trustee requested another CII order, which the Court issued on February 8, 2024.[10] Debtor filed her third proposed plan (the "Third Plan") on February 29, 2024, adding Trustee-disbursed payments of $34.00 per month on Marturano's second claim for $1,644.40 in Part 3.3.[11] First Mortgagee filed an objection to the Third Amended Plan on March 19, 2024, stating that it did not accept the plan's proposed modification of its claim secured by Debtor's primary residence; thus, the Amended Plan did not comply with 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5).[12] On April 2, 2024, Debtor filed a fourth proposed plan (the "Amended Plan") electing to surrender Debtor's residence in Part 3.5.[13] As with prior plans, the Amended Plan was filed using the CM/ECF account of "Jason Moss" and was electronically signed by Debtor and Counsel in Part 9.1 below the line that reads "The Debtor and the attorney for the debtor, if any, must sign below." Both signatures are indicated with "/s/" followed by their respective typed names. The Amended Plan was confirmed by order of the Court on May 7, 2024.[14]

---

[7] ECF No. 11.
[8] ECF No. 16.
[9] ECF No. 18.
[10] ECF Nos. 21 and 22.
[11] ECF No. 24.
[12] ECF No. 26.
[13] ECF No. 29.
[14] ECF No. 35.

Almost two months later, on July 2, 2024, the Court received the Correspondence from Debtor. In the Correspondence, Debtor stated that "[u]pon proper revision of my confirmed chapter 13 case, I notice[d] that my case was confirmed with a surrendering of property which is my home I currently reside in . . . . I did not sign any documents or verbally agree[] upon surrendering my home with Jason T Moss . . . ." Debtor described conversations she had with Counsel and a paralegal at the Firm and further posited that Counsel did not inform her about filing the modified plan that surrendered her home. Debtor's Correspondence requested that her case be re-heard and her confirmation "be amended with a different decision."

The AUST filed a response on July 17, 2024, indicating that the UST's Office had inquired about Debtor's allegations and Counsel's response to the AUST was inconsistent with Debtor's statements in the Correspondence.[15] The AUST further stated that the UST's Office requested a conference call with Counsel and Debtor, but the Firm responded that because the Court had entered the Order Scheduling Hearing, the Firm would review and address the assertions in the Correspondence accordingly. On July 18, 2024, Counsel filed a response to the Order Scheduling Hearing (the "Response") including attachments of documents already in the record.[16] The Response stated that Debtor and Counsel began working on a loan modification with Superior Loan Servicing on or about November 8, 2023, but sometime after First Mortgagee filed its proof of claim on December 26, 2023, Counsel was told by First Mortgagee's counsel that they were not able to do loan modifications.[17] Despite that information, according to the Response, the third

---

[15] ECF No. 41.
[16] ECF No. 42.
[17] It is not clear from the Response when exactly Counsel learned that Debtor would not be able to obtain a loan modification. Paragraph 4 of the Response states that after First Mortgagee filed its proof of claim, Counsel contacted First Mortgagee's counsel, James Martin Page, "to inquire about completing the loan modification and was instructed that the mortgage company as a small outfit [was] not able to do modifications." The Response, which appears to lay out his assertions in chronological order, then discusses events occurring between December 2023 through March 2024. *See* Response ¶ 5-9. Following discussion in ¶ 9 of First Mortgagee's objection to confirmation filed on March

plan was filed for Debtor on February 29, 2024 that still proposed a loan modification with First Mortgagee, prompting First Mortgagee to file its objection to confirmation. Counsel's Response further asserted that "[d]uring this entire process, Moss & Associates met with the debtor, on multiple occasions, to go over her options," including converting her case or surrendering her property to try to refinance the mortgages, and the plan feasibility issue due to First Mortgagee's claim "was addressed in depth." The Response indicated that the Amended Plan surrendering Debtor's interest in her property was filed "as would be the case with any client, after express permission was given by the client to proceed in this course of action." The Response also stated that "Moss & Associates"[18] met with Debtor on multiple occasions to discuss her case after her Amended Plan was confirmed.

At the Hearing, Debtor provided sworn statements regarding her interactions with Counsel and employees at the Firm that raised concerns about the Firm's practices regarding, among other things, obtaining a debtor's approval prior to filing documents bearing the debtor's signature. Debtor testified that when she first met with Counsel in August of 2023 to discuss potentially filing for bankruptcy, she was current on her mortgage payments and Counsel advised her to stop making those payments and file for bankruptcy in October 2023 once she was three months delinquent. Debtor also testified that she did not sign the Amended Plan that was ultimately confirmed and provided for the surrender of her residence. According to Debtor's testimony, she filed for bankruptcy to save her home from foreclosure, so she would not have stopped making mortgage payments and paid Counsel to help her file for bankruptcy if she had been informed at the beginning that she may need to surrender her home.

---

19, 2024, ¶ 11 of the Response notes that "[o]n April 1, 2024, debtor discussed with Moss & Associates that the loan modification with Gary L. Reed 401(k) Profit Sharing Plan was denied."

[18] Throughout the Response, Counsel asserted that Debtor had conversations or meetings with "Moss & Associates," but it is not clear whether Debtor was meeting or conversing with an attorney at the Firm or non-attorney staff.

5

Counsel then addressed the Court, stating that there was no other methodology he could have used in handling Debtor's case. He explained that he did not recall whether Debtor was behind on payments when they first met but he had advised her to pursue loan modification because the entire remaining balance of the mortgage held by First Mortgagee would come due in February 2024. Counsel at first asserted that Debtor signed the Amended Plan, but upon further questioning by the Court, he admitted that he did not have documentary evidence of Debtor's approval in compliance with SC LBR 9011-4 because, according to his recollection, Debtor only provided verbal consent.[19]

French represented at the Hearing that he was retained after Debtor sent the Correspondence to represent her in the pending foreclosure action in state court that has resulted from the surrender of Debtor's residence through the confirmed Amended Plan. According to French, Debtor has defenses and counterclaims that can be asserted to challenge the validity of the First Mortgagee's mortgage. He further noted that the foreclosure action has commenced but a foreclosure sale has not yet been scheduled.

Though Debtor's Correspondence requested that her case be "re-heard" or her confirmed Amended Plan be "treated with a different decision," at the Hearing, Debtor indicated that she was not sure what her best course of action was. She was uncertain as to whether Counsel should continue representing her given what has transpired in the case. The Court noted that it could not provide her with legal advice, and because she was still represented by Counsel, she would need to discuss with him and French how she should proceed.

---

[19] More specifically, the Court asked counsel, "So she did not sign the plan?" Counsel responded, "Not physically. She gave consent in the office." Regardless of whether Debtor gave express consent to the filing of the Amended Plan, Counsel is unable to offer any documentation of such consent as SC LBR 9011-4 requires.

The AUST recommended that the Court order Counsel to return any fees Debtor had paid the Firm and requested additional time to investigate Counsel and the Firm's actions.[20] The Trustee noted that Debtor had contacted her office in June 2024 asking for advice when she was having trouble communicating with Counsel's office. The Trustee also recommended that, to the extent the Court orders Counsel to disgorge fees in this case, such order should also direct her office not to disburse any more attorney's fees to the Firm for its services provided in Debtor's case. Following the Hearing and at the Court's request, Counsel filed an affidavit (the "Affidavit") certifying the amount his firm had been paid in attorney's fees for Debtor's case, which totals $2,581.36 (the "Funds").[21] The Affidavit further states:

> This amount has been refunded to the debtor per order of the court. These funds will be sent to debtor's state court attorney, Shawn Michael French . . . per discussions with the debtor. A Certificate of Service will be filed with the Court related to this.

## **DISCUSSION AND CONCLUSIONS OF LAW**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and this Court may enter a final order.

The Court has the duty and authority to regulate the litigants that appear before it and address improper conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (finding that the court's power "to manage its own affairs so as to achieve the orderly and expeditious disposition

---

[20] The AUST further referred the Court to the Stipulations of Jason Moss and Consent Order Resolving Motion of the United States Trustee for Review of Attorney Conduct entered in the case of *In re Deborah Sumter Jefferson*, Case No. 18-01907-EG on July 20, 2023 (ECF No. 129). In *Jefferson*, the UST raised concerns about statements that the debtor made in that case while testifying at a Bankruptcy Rule 2004 examination regarding advice she had received from Counsel. In the stipulated consent order, among other things, it was agreed that Counsel "shall endeavor to communicate with his clients clearly and in reasonably understandable ways." *Id.* at B.

[21] ECF No. 45, filed July 25, 2024. The Disclosure of Compensation of Attorney for Debtor indicated that Counsel agreed to accept $4,300 in legal fees for representing Debtor in this case, $586 of which was paid pre-petition. *See* ECF No. 1.

7

of cases" includes "the power to control admission to its bar and to discipline attorneys who appear before it"); *In re Weiss*, 111 F.3d 1159, 1171 (4th Cir. 1997) (holding that federal courts have inherent authority to regulate litigants). "The federal courts may and should hold attorneys appearing before them to recognized standards of conduct in their jurisdictions: 'The sanctioning court must, however, hold attorneys accountable to recognized standards of professional conduct.'" *In re Walker*, 604 B.R. 10, 11 (Bankr. D.S.C. 2019) (quoting *In re Computer Dynamics, Inc.*, 252 B.R. 50, 64 (Bankr. E.D. Va. 1997), *aff'd*, No. 98-1793, 1999 WL 350943 (4th Cir. Jun. 1, 1999) (internal quotation marks omitted)). Attorneys practicing before this Court are bound by the South Carolina Rules of Professional Conduct, including Rule 407, SCACR.[22]

Rule 5005(a)(2) of the Federal Rules of Bankruptcy Procedure provides that "[a]n entity represented by an attorney shall file electronically" and that "[a] filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature." Fed. R. Bankr. P. 5005(a)(2)(A), (C); *see also* SC LBR 5005-4. When filing a document on behalf of a represented party with an electronic signature—such as the Amended Plan filed in this case—Counsel is required to obtain either (1) the original, "wet" signature of the signer (here, Debtor) or (2) express documented permission from the signer to include her signature on the document. *See* SC LBR 9011-4(a)(1) (providing that the filing of the document(s) by the CM/ECF filer ***constitutes a certification that the filer obtained, prior to filing, either the original, physical signature or express documented***

---

[22] *See* Local Civ. Rule 83.IX.04 (D.S.C.) (providing that the Rules of Disciplinary Enforcement set forth at Local Civ. Rule 83.I.08 (D.S.C.) apply in the bankruptcy division of the district court); Local Civ. Rule 83.I.08, RDE Rule IV(B) (D.S.C.) (providing that the Code of Professional Responsibility adopted by the U.S. District Court for the District of South Carolina is the South Carolina Rules of Professional Conduct (Rule 407, SCACR) adopted by the South Carolina Supreme Court); Local Civ. R. Rule 83.I.03.

***permission from the signer to affix the signer's signature to the document and file it***, and that the filer has verified that the authorizing signer is in fact the signer) (emphasis added).

SC LBR 9011-4(a)(2) further requires:

> Unless otherwise provided by statute, rule, or order, the CM/ECF Participant is not required to obtain or retain original signatures where the signer has expressly authorized in writing or electronically that the document be filed with that signer's digital or electronic signature affixed. However, ***the filer must retain sufficient evidence of the signer's permission to sign a particular document*** and the document's contents as follows: if the case is dismissed, for a period of three (3) years; or if not dismissed, until the case or adversary proceeding is closed and the appeal time has passed and, if applicable, the time within which a discharge of the debtor may be revoked has passed. Under order of the Court, such documents must be provided for review to parties.

(emphasis added). Counsel acknowledged at the Hearing that he did not retain sufficient evidence of the signer's permission to sign the Amended Plan on Debtor's behalf and admitted that he did not have the original signature on the Amended Plan or any documentation substantiating Debtor's verbal consent to the Amended Plan and for Counsel to affix her /s/ signature on the document. This Court has previously determined that the submission of documents containing the electronic signature of the debtor where the debtor did not in fact sign the document was an unethical practice and a fraud upon the Court. *See, e.g., In re Farnsworth,* No. 05-08679-JW, slip op. (Bankr. D.S.C. Jan. 3, 2007) (finding that by presenting documents to the court that did not bear the debtor's original signature, the attorney breached his duties to the Court, including his duty to not make a false statement of fact and duty not to bring frivolous proceedings before the court). In such cases, this Court has previously required the attorney engaging in such practice to return fees paid by the debtor. *See In re Storay,* 364 B.R. 194 (Bankr. D.S.C. 2006) (ordering attorney who filed petition without authorization of debtors to disgorge fees); *In re Brock,* No. 04-08646-W, 2004 WL 7197433 (Bankr. D.S.C. Oct. 13, 2004) (ordering attorney to return fees after finding that the

attorney violated SCACR 407 and Fed. R. Bankr. P. 9011 by filing several documents containing a party's signature and certifying the attorney's knowledge of the party's consent to file when the attorney did not have any authority to file documents on the party's behalf).[23]

Based on the record in this case, the Court concludes that Counsel violated SC LBR Rule 9011-4(a)(1) and (2).[24] If not already accomplished, Counsel shall return the Funds and any other funds paid to the Firm on behalf of Debtor relating to this bankruptcy case as Debtor directs him, and no further funds shall be disbursed to Counsel by the Trustee in this case, unless otherwise ordered by the Court. Within five (5) days of the entry of this Order, Counsel shall file an affidavit with supporting documentation evidencing that the Funds were disgorged and refunded as directed by Debtor.

Given that Debtor has not yet indicated how she wishes to proceed with her case after consulting with counsel, the order confirming the Amended Plan remains in full force and effect, without prejudice to Debtor seeking further relief within a reasonable amount of time.[25]

This relief is also without prejudice to the AUST's rights to request further relief within 60 days from the entry of this Order unless that time is further extended by the Court. **During that**

---

[23] In some of the cases mentioned, the Court went as far as suspending the attorney for egregious and unethical conduct. The Court, however, acknowledges that pursuant to Rule 83.I.08 of the U.S. District Court for the District of South Carolina—which was adopted after these cases were decided—any disciplinary proceeding against a member of the bar admitted to this Court can only take place pursuant to the procedures set forth in that Rule and determined by a disciplinary panel of three judges. These cases were also decided before the adoption of SC LBR 9011-4.

[24] The Court notes that there may also be grounds for finding that Counsel violated Fed. R. Bankr. P. 9011(b)(3). In *Brock*, the court determined that the attorney's filing of a voluntary petition on behalf of the debtor's wife, without consulting with her directly to confirm that she desired to file for bankruptcy, constituted a violation of Fed. R. Bank. P. 9011 in that the attorney "certified to this Court by filing the petition that to the best of his knowledge, information, and belief, and based on reasonable inquiry under the circumstances[,] that [debtor's spouse] desired to file a bankruptcy petition." No. 04-08646-W, 2004 WL 7197433, at *3. However, the Court need not analyze whether Counsel's filing of the Amended Plan constituted a violation of Fed. R. Bankr. P. 9011 at this time because the Court has already found that Counsel violated SC LBR 9011-4, which was adopted after *Brock* was decided.

[25] Despite having to disgorge all funds and not receiving any future compensation in this case, Counsel remains the attorney of record and thus has a continuing duty to represent Debtor (except as may have been provided in the retainer agreement concerning appeals and adversary proceedings) according to the applicable rules of professional conduct until he is relieved from such duty by the Court or Debtor terminates his services. *See* SC LBR 9011-1(b).

10

**period, the Clerk's Office shall keep the case open even if the case is dismissed.** Regardless of the disposition of this case, the Court retains jurisdiction to consider any other or further requests regarding the matters addressed herein.

    **AND IT IS SO ORDERED**.

**FILED BY THE COURT**
**08/09/2024**



Entered: 08/09/2024

Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina